UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TERRI E. BALLEW, | ) | CIVIL ACTION 4:09-2032-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI"). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

### I. PROCEDURAL HISTORY

Plaintiff, Terri E. Ballew, protectively filed applications for DIB and SSI on March 8, 2006, with an alleged onset of disability of December 31, 2005. At the time of the hearing, Plaintiff amended her onset date to the last day of work which was April 28, 2006. (Tr. 27). Plaintiff requested a hearing before an administrative law judge (ALJ) after her claims were denied initially

and on reconsideration. At Plaintiff's request, an ALJ conducted a hearing on December 18, 2008, at which both Plaintiff and a vocational expert (VE) appeared and testified. On February 9, 2009, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 11-20). After the Appeals Council denied Plaintiff's request for review (Tr. 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). Plaintiff filed the instant action on August 3, 2009.

## II.  FACTUAL BACKGROUND

The Plaintiff was born on August 2, 1959, and was forty-nine years of age at the time of her hearing before the ALJ. (Tr. 31). Plaintiff has a limited education and past relevant work experience as a sales person and hand packager. (Tr. 18, 32).

## III.  DISABILITY ANALYSIS

The Plaintiff argues as follows, quoted verbatim:

1. The order of the ALJ should be reversed, or, in the alternative remanded because the ALJ failed to consider the various factors set forth in 20 C.F.R. 404.1527(d) in evaluating the opinion of the treating physician.

2. The order of the ALJ should be reversed, or, in the alternative, remanded because the ALJ failed to properly consider the symptoms of pain pursuant to C.F.R. 404.1529 address the chronic headaches suffered by the Plaintiff and their effect on her ability to work.

3. The opinion of the ALJ should be reversed, or, in the alternative, remanded because the ALJ failed to properly consider the opinion of Dr. Gettys, treating physician, as well as the pertinent portions of the opinion of Dr. Kofoed in regards to her limitations related to depression.

(Plaintiff's brief).

2

The Commissioner contends that the ALJ did not commit these errors and urges that substantial evidence supports the determination that Plaintiff was not disabled.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings in his decision of February 9, 2009.

1.  The claimant meets the insured status requirements of the Social Security Act through December 30, 2009.

2.  The claimant has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date (20 CFR 404.1571 et. seq., and 416.971 et seq.).

3.  The claimant has the following severe impairment: vertigo; fibromyalgia; degenerative disc disease; depression; anxiety; and personality disorder (20 CFR 404.1521 et. seq. and 416.921 et seq.).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to occasional climbing of ladders, ropes, and scaffolds. She is limited to occasional balancing. She must avoid concentrated exposure to hazards and moving heavy machinery. Nonexertionally, she is limited to simple routine repetitive tasks with occasional interaction with the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 2, 1959, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

>       finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(c), and 404.1569a, 416.969, and 416.969a).
>
> 11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-19).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of

disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

## IV. ANALYSIS

Plaintiff argues the ALJ erred in discounting the opinion of the treating physician, Dr. James Gettys, that she was totally disabled by vertigo related to a closed head injury. Plaintiff asserts that the ALJ was incorrect when he found that Dr. Gettys' opinion was not consistent with the evidence of record and that there was little objective evidence to support the opinion other than Plaintiff's subjective complaints. Plaintiff contends that there is objective evidence from Dr. Robert Brown that testing was consistent with vertigo.

Defendant argues the ALJ properly evaluated Dr. Gettys' medical opinion with regard to Plaintiff's vertigo and his decision is supported by substantial evidence. Defendant asserts the ALJ considered Dr. Gettys' opinion regarding vertigo but gave his opinion little weight because it was inconsistent with the evidence of record and Plaintiff's unreliable subjective complaints. (Defs.' Bf. at 14). Defendant contends the ALJ was correct in his decision because Dr. Gettys referenced no objective medical findings and instead recited Plaintiff's complaints.

Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see id. § 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 654) (internal citation omitted). The rule, however, does not mandate that her opinion be given

controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 61 Fed. Reg. 34,490-01, 34,491 (July 2, 1996); see also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

> The ALJ found the following with regards to Dr. Gettys' opinion with regard to her vertigo:
>
> As for the opinion evidence, James Gettys, M.D. is the claimant's treating primary practitioner. Dr. Gettys has opined that the claimant is totally disabled by vertigo related to a closed head injury and diffuse and substantial physical pain. The undersigned notes that this conclusion is not consistent with the evidence of record. The treatment record indicates generally unsupported subjective complaints from a person with serous credibility issues. Dr. Gettys' opinion appears to be largely based on the claimant's unreliable subjective reports since there is little objective evidence of significant functional limitations. No other medical source has reported that the claimant is totally disabled. Furthermore, the undersigned notes the opinion that the claimant is unable to sustain full-time, competitive employment is an issue reserved to the Commissioner and is not a medical opinion as described in 20 CFR 404.1527 and 416.927. Despite the fact that Dr. Gettys is a treating source, his opinion that the claimant is totally disabled is granted little weight since it is inconsistent with the record as a whole.

(Tr. 18).

As stated, Plaintiff argues that Dr. Brown's report supported Dr. Gettys' statements with regard to her vertigo. In response, Defendant argues that Dr. Brown's opinion that she had vertigo as a result of a concussion did not require the ALJ to adopt Dr. Gettys' opinion because it was also

based substantially on Plaintiff's "unreliable subjective complaints." (Defs.' Bf. at. 15).  Defendant further asserts that Dr. Brown's opinion was not confirmed by Dr. Kistler, an examining neurologist, who diagnosed a "history of vertigo. No neurologic deficit noted, previous negative workup." (Id. at 15).

Dr. Brown's report dated August 30, 2006, reveals normal results on physical examination with the exception of the Romberg testing. On October 18, 2006, Dr. Brown noted that the results of her video nystagmography was consistent with his clinical impression of a central vertigo but no sign of any benign positional vertigo. He noted that she had problems with balance and the vertigo symptoms are worse when she has headaches. However, he noted that her gait and fine motor skills are normal. His impression was "significant central vertigo, probably due to a concussion." (Tr. 406). Dr. Brown stated that due to the severity and duration of her symptoms that she "may continue to experience some of these symptoms for the foreseeable future and referred her to Dr. Kent Kistler for a neurological evaluation."  (Tr. 407).

A review of the notes from Dr. Kistler, neurologist, reveals that upon examination he found Plaintiff had full range of motion, no muscle spasms, and complaints of some tenderness in the neck but no swelling or edema of the extremities. Dr. Kistler further found Plaintiff had normal mental status, intact cranial nerves, normal gait and tandem walking, normal reflexes and sensation, normal muscle tone and strength throughout, and limited motor function due to complaints of shoulder pain. Dr. Kistler's impression was, "history of vertigo. No neurological deficit noted, previous negative workup. Agree with current management with conservative therapy and vestibular exercises." (Tr. 402).

The ALJ found that the consultative examiners "questioned the validity of her effort and responses," and that no other medical source reported that plaintiff was disabled to support Dr. Gettys' opinion. (Tr. 17). Therefore, the ALJ found that Dr. Gettys' conclusion was "not consistent with the evidence of record." (Id.). Moreover, Dr. Gettys stated that her symptoms of vertigo were related to a closed head injury which the ALJ found was inconsistent with the evidence of record since the MRI and CT scan of her head showed no abnormalities consistent with a concussion or closed head injury. On January 9, 2007, Dr. Gettys submitted a supplemental opinion to his August 6, 2007, report in which he stated that she had ongoing severe vertigo and was at "high risk for falls due to her balance problems. Her post concussive vertigo also makes driving or being a passenger in a vehicle very difficult." (Tr. 457). While the ALJ did not give controlling weight to Dr. Gettys' opinion that Plaintiff is disabled, he did accord some weight after explaining his reasoning. The ALJ found that Plaintiff's vertigo was a severe impairment and limited her RFC to only occasional climbing of ladders, ropes and scaffolds, and limited to occasional balancing. He also stated that she must avoid concentrated exposure to hazards and moving heavy machinery. (Tr. 15). Based on the evidence of record, there is substantial evidence to support the ALJ's decision.

Plaintiff further argues that the ALJ erred in failing to consider Dr. Gettys' and Dr. Kofoed's opinions with respect to Plaintiff's limitations related to depression. Plaintiff asserts that Dr. Kofoed found that she was "irritable and is likely to have poor stress tolerance skills." (Pl.'s Br. at 7). Further, Plaintiff contends that Dr. Siegel also diagnosed her with depression and recommended a formal psychiatric evaluation noting bizarre and abnormal behavior. Plaintiff argues, however, the opinions were not taken into account by the ALJ. Further, Plaintiff argues that Dr. Henein from Oaktree stated on May 5, 2005, that "she is very depressed and I think that is a major cause for her

symptoms." (Pl's Br. at 7). Plaintiff states that every record from her treatment at Oaktree noted depression and her cardiologist, Dr. Barbara Moran-Faile, stated her mood was depressed on April 9, 2008.

Defendant argues there is substantial evidence to support the ALJ's decision with regard to Plaintiff's depression. Defendant asserts the ALJ found Plaintiff's depression and anxiety were severe impairments which caused moderate limitations in activities of daily living, social functional and concentration, persistence , and pace, and no episodes of decompensation. Defendant asserts the ALJ also accounted for the effects of her depression and anxiety in his RFC assessment by limiting her to simple, routine, repetitive tasks with occasional interaction with the public. Defendant asserts that nothing in the reports of Dr. Kofoed, Dr. Siegel, Dr. Henein, and Dr. Moran-Faile was inconsistent with the ALJ's assessment of her mental limitations.

With regard to Plaintiff's depression, the ALJ found the following:

> The claimant is also affected by depression, anxiety, and personality disorder. These impairments reportedly cause problems with social interaction and concentration abilities. They also have more than a minimal effect on her ability to perform work-related activities and are therefore "severe."

(Tr. 14).

Further, the ALJ concluded:

> In April 2006, Jeffrey A. Siegel, M.D., conducted a consultative examination and diagnosed the claimant with depression and fibromyalgia. Dr. Siegel's physical examination revealed no specific abnormal findings apart from subjective complaints of pain. Dr. Siegel noted abnormal and bizarre behavior during the evaluation. The claimant used a walker though she was clearly able to walk without it and actually moved a chair out of her path when obstructed. She was able to climb on the examination table independently and walk without assistance. She exhibited fair to good grip strength when distracted and poor grip strength without distraction. Mental status examination found the claimant unable to recite even one numeral less than 20, and she could not follow a simple command such as "take your shoes off and sit on the table."

> The claimant has sought minimal treatment for her alleged psychological impairments. She has not received regular counseling or therapy since 2000. In July 2005, mental status examination revealed subjective complaints of irritability, depression, social isolation, and significant physical limitation. Emotional and cognitive testing revealed poor and unreliable effort on the part of the claimant, according to the consultative examiner. She significantly overendorsed queried psychological symptoms regarding her emotional state. She completed a number of cognitive tests in an invalid manner as well. The examiner concluded that her cognitive findings were not considered interpretable. He noted that the diagnostic impression was significantly obscured by failure to cognitive symptom validly measures and self-report inventories.
>
> In April 2006, Bruce Kofoed, Ph.D., conducted a psychological consultative examination and concluded that the claimant's history appeared consistent with a probable mood disorder though malingering would certainly need to be considered based on poor cognitive effort. She was unable to respond to virtually all of the mental status tasks posed to her. Dr. Kofoed noted that her overall performance and cognitive screening tasks were suggestive of magnification of impairment.
>
> Overall, the claimant is not credible regarding her alleged impairments. Despite her complaints of substantial physical pain, there are few objective abnormalities anywhere in the treatment record. She is an unreliable reporter. Each of three consultative examiners questioned the validity of her effort and responses. She used a walker when she clearly does not need one. She was completely unreliable when performing cognitive tests. Her responses indicate severe cognitive and intellectual deficits that are entirely inconsistent with her presentation at the hearing to her personal history. The question of malingering was raised by both psychological examiners. She is not credible regarding her alleged functional limitations. She retains the abilities to perform light work with the additional restrictions described above. Furthermore, she is able to perform simple repetitive tasks. Due to her complaints of social anxiety, she is limited to no more than occasional interaction with the general public.

(Tr. 17, exhibit designations omitted).

The ALJ found that Plaintiff had severe impairments of depression, anxiety, and personality disorder. (Tr. 13). As set forth above, the ALJ found Plaintiff was limited to simple routine repetitive tasks with occasional interaction with the public. (Tr. 15). Even though the medical reports revealed that Plaintiff was depressed, there were no significant limitations placed on her functional ability by Dr.Koefed, Dr. Siegel, Dr. Henein, or Dr. Moran-Faile. As stated, the ALJ found Plaintiff had

a severe impairment as to depression, anxiety, and personality disorder, and placed limitations into her RFC. In reaching his decision, the ALJ considered the opinions and records of Plaintiff's medical providers and the credibility of the plaintiff.[1] Based on the evidence before this court, there is substantial evidence to support the ALJ's finding with regard to Plaintiff's depression.

Lastly, plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's complaints of headaches. Defendant argues there is substantial evidence to support the ALJ's finding that Plaintiff's headaches were not a severe impairment in that there are no reports of diagnostic studies establishing the existence of an impairment that could reasonably be expected to produce severe headaches; that the record contains no MRI study, CT scan, EEG findings, or other reports of diagnostic studies establishing the existence of an impairment that could reasonably be expected to produce severe headaches. Defendant argues that Plaintiff relies on Dr. Gettys' and Dr. Brown's statements that she complained of headaches and cites to her testimony. However, Defendant argues that Plaintiff's assertion that her headaches were the result of a closed head injury she received in a motor vehicle accident is disputed by the fact that while she told Dr. Brown that she lost consciousness, the records from the hospital on the date of the accident reveal she never lost consciousness and was not diagnosed with a concussion or closed head injury following the accident. Defendant contends that because the record did not contain evidence of an impairment that

---

[1] Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is deemed established does the factfinder proceed to the second step:  consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints.  See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

could reasonably be expected to produce severe headaches, the ALJ determined that the alleged headaches did not affect her ability to do basic work activities.

The regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. See, 20 C.F.R. §§ 404.1521(a), 416.921(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See, 20 C.F.R. §§ 404.1521(b), 416.921(b) (2005). The Fourth Circuit held in Evans v. Heckler, that "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir.1984)) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984), (citations omitted). Plaintiff only presents medical notes where it is mentioned that she complained of headaches. Plaintiff has not pointed to any objective evidence to support her claim, or pointed to any record evidence regarding any specific limitations her headaches cause.  The ALJ stated the following with respect of Plaintiff's headaches:

> She has also complained of headaches. However, intracranial imaging and neurological testing has revealed no abnormalities. Aside from subjective complaints, there is little support for her complaints of substantial headaches. Accordingly, this impairment is also "non-severe."

 (Tr. 14).

In his evaluation report of October 26, 2006, Dr. Kistler noted that "She denied any significant headache with this. . ." (Tr. 400). Dr. Kistler noted that she had a history of "intermittent

13

headache." (Tr. 402). Plaintiff is correct that the medical records reveal that she has complained of headaches during her office visits and that her vertigo is worse when she has a headache. At the hearing, Plaintiff denied having migraines but described them as "severe headaches." (Tr. 390. She testified that with the headaches and vertigo, certain movements make her nauseous. (Tr. 36, 46). However, Plaintiff testified that she only takes Tylenol for the headaches because that is all she can afford, and that she has not been to the hospital or emergency room due to a headache. (Tr. 39). Additionally, as set forth by the ALJ, results of the MRI and CT Scan of Plaintiff's head were normal, and Plaintiff stated at the hospital that she did not lose consciousness but later told Dr. Brown that she did lose consciousness after the accident. The ALJ found her testimony to be less than credible stating:

> The objective evidence provides some support to the claimant's allegations. However, it does not support the elevated level of impairment alleged. She has sought treatment for diffuse physical pain that is aggravated by physical activity and has been attributed to fibromyalgia. She attributed this pain to injuries sustained in motor vehicle accident in January 2006. She has also complained of vertigo due to her head striking the dashboard. However, diagnostic testing has revealed no cranial or neurological abnormality. Regarding her complaints of physical pain, there is little objective support. Physical examinations have revealed few significant abnormalities. There is no evidence of ambulatory deficits despite her complaints of weakness and imbalance.

(Tr. 16).

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record,

including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ found at Craig's step one that Plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. (Tr. 18). It is here that Plaintiff has an issue, as a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

The ALJ concluded that Plaintiff's subjective testimony as to the extent of her pain and limitations was not credible to the extent it was not consistent with the RFC found by the ALJ. The ALJ noted that he based his decision on the objective medical records. The ALJ appropriately considered these complaints under the regulatory framework and his decision is based on substantial evidence.

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this

Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

    AND IT IS SO ORDERED.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

February 23, 2011  
Florence, South Carolina